1  **EDWIN C. SCHREIBER, SBN 41066**
   **ERIC A. SCHREIBER, SBN 194851**
2  **EAN M. SCHREIBER, SBN 284361**
   **SCHREIBER & SCHREIBER, INC.**
3  16501 Ventura Boulevard  Suite 401
   Encino, California 91436-2068
4  Tel:  (818) 789-2577
   Fax:  (818) 789-3391
5

6  Attorneys for Plaintiff, Joel Leebove

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11 JOEL LEEBOVE, individually            )  **Case No. CV-13-01024-R-(SHx)**
   and on behalf of a class of persons similarly )
12 situated                              )  **CLASS ACTION**
                    Plaintiff,            )
13                                       )  **PLAINTIFF'S NOTICE OF MOTION AND**
           vs.                            )  **MOTION FOR CLASS CERTIFICATION;**
14                                       )  **DECLARATIONS IN SUPPORT THEREOF**
   WAL-MART STORES, INC.,                 )
15 a Delaware corporation;                )  **Date:        September 16, 2013**
                                          )  **Time:        10:00 a.m.**
16                                       )  **Courtroom:   8**
                    Defendants            )
17                                       )  **The Honorable Manuel L. Real**
                                          )
18                                          **Action Filed: February 12, 2013**

19

20

21

22

23

24

25

26

27

28

                                  1

# TABLE OF CONTENTS

**NOTICE OF MOTION**     iii

**I. INTRODUCTION**     1

**II. THE SONG-BEVERLY CREDIT CARD ACT**     1

**III. CLASS CERTIFICATION AND FRCP RULE 23**     3

    *A. The Nature of this Class*     4

    *B. Numerosity*     5

    *C. Commonality*     6

    *D. Typicality*     10

    *E. Adequacy of Representation*     11

    *F. Predominance of Common Issues of Law and Fact and Superiority*     12

       1. Predominance of fact and law     13

       2. A Class Action is the Superior Method of Handling this Case     13

       3. Class Definition     15

       4. Class Notice Should be Made by Email     16

       5. In the Even the Court Denies Class Certification, Plaintiff Respectfully Requests it be Without Prejudice, so Further Discovery can be Taken in Order to Provide the Court with a More Complete Picture     17

**IV. CONCLUSION**     17

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Amchem Products, Inc. v. Windsor* 521 U.S. 591, 625 (1997)          12

*Colesberry v. Ruiz Food Products, Inc.* 2006 WL 1875444
*7 (E.D. Cal. June 30, 2006)          16

*Eisen v. Carlisle & Jacqueline* 417 U.S. 156, 175-76 (1974)          16

*Hanlon v. Chrysler Corp.* 150 F.3d 1011, 1019 (9th Cir. 1998)          7

*In re GMC Pick-Up Truck Fuel Tank Products Liability
Litigation* 55 F.3d 768, 784 (3rd Cir. 1995)          14

*Jones v. E\*Trade Mortgage Corp.* 2006 WL 581257
*2 (S.D. Cal. Feb. 17, 2006).          12

*Korn v. Polo Ralph Lauren Corporation*
536 F. Supp.2d 1199 (E.D. Cal. 2008)          5-6

*McPhail v. First Command Financial Planning, Inc.*,
247 F.R.D. 598, 610 (S.D. Cal. 2007          10

*Stanton v. Boeing* 327 F.3d 938, 957 (9th Cir. 2003)          11

*Valentino v. Carter-Wallace, Inc.* 97 F.3d 1227, 1234 (9th Cir. 1996)   14

*Weeks v. Barecco Oil Co.* 125 F.2d 84, 89-90 (7th Cir. 1941)          12

*Wiener v. Dannon Co.* 255 F.R.D. 658, 664 (C.D. Cal. 2009)          4

*Zhu v. Fujitsu Group 401(K) Plan* 2004 WL 3252573
at *5 (N.D. Cal. March 3, 2004)          5

**STATE CASES**

*Florez v. Linens n' Things* (2003) 108 Cal. App.4th 447          8

*Pineda v. Williams-Sonoma Stores* (2011) 51 Cal.4th 524          2, 8-9

**FEDERAL STATUTES**

F.R.C.P. Rule 23          *Passim.*

**STATE STATUTES**

California Civil Code § 1747.08          *Passim.*

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE THAT ON September 16, 2013 at 10:00 a.m. in Courtroom 8 of the United States District Court, located st 312 N. Spring Street, Los Angles, California 90012, Plaintiff Joel Leebove will move the Court for an order certifying the above-captioned action as a class action, and seeking a further order regarding the form and method of class notice.

DATED: June 14, 2013                              SCHREIBER & SCHREIBER, INC.


                                          BY:    /s/ Edwin C. Schreiber
                                                 Edwin C. Schreiber, Attorneys for
                                                 Plaintiff, Joel Leebove

# I. INTRODUCTION

This action is filed as a class action seeking to certify a class of California residents who, between February 12, 2012 and the date of hearing of this motion made a purchase from Defendant Wal-Mart ("Defendant" or "Walmart") by and through a credit card, and were required to provide their telephone number and/or address to Walmart as a condition of obtaining goods from Walmart, either shipped to them (subclass one) or picked up in store (subclass two). The complaint is a one cause of action complaint under California Civil Code § 1747.08 also known as the Song-Beverly Credit Card Act, a statute which forbids any person or entity from requesting or requiring a consumer to provide personal information in connection with a credit card transaction. As the following will demonstrate, this case is ideally suited for class treatment.

# II. THE SONG-BEVERLY CREDIT CARD ACT

Civil Code § 1747.08 (the "Act") prohibits any person or entity from requesting or requiring personal information from a consumer who chooses to make a purchase with a credit card.

The statute itself states,

(a) Except as provided in subdivision ( c), no person, firm, partnership, association, or corporation that accepts credit cards for the transaction of business shall do any of the following:

(1) Request, or require as a condition to accepting the credit card as payment in full or in part for goods or services, the cardholder to write any personal identification information upon the credit card transaction form or otherwise.

(2) Request, or require as a condition to accepting the credit card as payment in full or in part for goods or services, the cardholder to provide personal identification information, which the person, firm, partnership, association, or corporation accepting the credit card writes, causes to be written, or otherwise records upon the credit card transaction form or otherwise.

(3) Utilize, in any credit card transaction, a credit card form which contains preprinted spaces specifically designated for filling in any personal identification information of the cardholder.

(b) For purposes of this section "personal identification information," means information concerning the cardholder, other than information set forth on the credit card, and including, but not limited to, the cardholder's address and

telephone number.

This statute has a one-year statute of limitations (Civil Code § 1747.08), meaning the class consists of California residents who ordered over the Internet and either had merchandise shipped to them or picked up the merchandise in store, between February 12, 2012 and the date of the hearing of this class certification motion (September 16, 2013).

There are exceptions to this law, which include a contractual obligation or the obligation of state or federal law to record such personal information, and a special purpose exception which would allow, for example, a merchant to obtain an address for delivery of a product.  Any violation of the Act results in a penalty wholly within the Court's discretion between one penny ($.01) and two hundred fifty dollars ($250.00), and up to one thousand dollars ($1,000.00) for each violation thereafter.  The California Supreme Court, in a recent opinion *Pineda v. Williams-Sonoma Stores* (2011) 51 Cal.4th 524 ("*Pineda*") noted,

> However, the legislative history of the Credit Card Act in general and section 1747.08 in particular demonstrates the Legislature intended to provide **robust consumer protections by prohibiting retailers from soliciting and recording information about the cardholder that is unnecessary to the credit card transaction**.  (*Id*. at 535-36, emphasis added).

Under the Act, all a consumer need plead and prove is that:

1. He or she was involved in a credit card transaction;

2. The merchant requested or required him or her to provide personal information; and

3. That such personal information was recorded by the merchant.

An injured consumer need not plead or prove actual damages, rather the Act provides for a civil penalty ranging from $.01 to $250.00 (first violation), and $.01 and $1,000 (each subsequent violation).

As the California Supreme Court in interpreting the law has held, the purpose of the act is to provide significant consumer protection by prohibiting merchants from requesting or requiring from a consumer any information other than information that

is absolutely necessary to complete the credit card transaction. Therefore, if any consumer information is not required–or put another way, if the transaction can be completed by Walmart without the requested information, then the request for and recording of the personal information violates the Act. Thus, if Walmart has requested and recorded personal information unnecessary to complete credit card transactions with its customers, it is subject to a penalty of between $.01 and $250.00 for the first transaction, and $.01 and $1,000.00 for every transaction thereafter. Therefore, this case is ideally suited for class treatment, as is demonstrated below, Walmart had a uniform policy of requesting telephone numbers and addresses from consumers, and transactions can be completed without providing such information. Thus, each class member's claim is virtually identical, as all have fallen victim to the same common prohibited practice, and each is entitled to a civil penalty.

## III. CLASS CERTIFICATION AND FRCP RULE 23

F.R.C.P. Rule 23 states.

(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

(b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

( C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

In certifying an action as a class action, Plaintiff bears the burden of demonstrating: 1. Numerosity so that joinder is impracticable; 2. Common questions of law and fact; 3. The claims or defenses of the class representative are typical of the class; and 4. The class representative will fairly and adequately represent the interest of the class. (*Wiener v. Dannon Co.* 255 F.R.D. 658, 664 (C.D. Cal. 2009). Furthermore, in addition to the aforementioned four requirements, a plaintiff must also demonstrate that the action is maintainable under Rule 23(b)(1), (2) or (3), by demonstrating that: 1. The prosecution of the action would create a risk of inconsistent results for class members or an incompatible system of conduct for the defendant; 2. The defendant has acted so that injunctive relief would be appropriate for the class as a whole; or 3. Questions of law or fact common to class members predominate over questions affecting individual members, and that a class action is a superior method of litigation. (*Id*. at 668). Plaintiff believes all of the necessary evidence has been garnered by and between the admissions contained in Walmart's answer, as well as based upon Plaintiff's testimony and exhibits.

*A. The Nature of this Class*

As plead in the complaint, Plaintiff seeks to certify a class of California residents (natural persons only), who between February 13, 2012 and the date of this motion

purchased goods from Walmart with a credit card (debit card purchases are not included in the Act's protection and debit card purchasers are specifically excluded from the class definition), and were required to fill out Walmart's preprinted form including providing Walmart with his or her telephone number and/or address. The complaint seeks only the civil penalty on behalf of each class member, and does not seek injunctive relief (which relief is not available to a private plaintiff).

*B. Numerosity*

There are at least several thousand class members, if not more. In its answer, Walmart admitted that the damages could exceed $5,000,000.00 (Answer Page 1, lines 10-13, Page 3, paragraph 6, lines 13-17) for CAFA jurisdictional purposes. Because the Act provides for a penalty of not more than $250 for the first violation and not more than $1,000.00 for each violation thereafter, Walmart's admission means that there cannot be any less than 5001 class members, and likely, thousands, if not tens of thousands or more customers. Generally, even a few hundred persons or less qualifies for class treatment (*see e.g. Zhu v. Fujitsu Group 401(K) Plan* 2004 WL 3252573 at *5 (N.D. Cal. March 3, 2004) [class of approximately 139 members sufficient for numerosity]). In fact, the specific issue of a minimum guarantee of 5,001 or more class members was dealt with in *Korn v. Polo Ralph Lauren Corporation* 536 F. Supp.2d 1199 (E.D. Cal. 2008), under the Song-Beverly Credit Card Act, so long as the plaintiff seeks the maximum civil penalties for each class member ($1,000.00), all a Defendant need do is declare that there were 5,001 or more credit card transactions within the statutory period in order to reach Federal Court jurisdiction under CAFA. The Court noted,

> Plaintiff's complaint alleges that Korn and every other class member "is entitled to civil penalties in amounts up to one thousand dollars ($1,000) per violation." As such, plaintiff has explicitly pled the statutory maximum set forth in § 1747.08. Plaintiff does not stipulate that he will demand less than the maximum civil penalty. Therefore, in order to demonstrate that the amount in controversy meets the CAFA's jurisdictional requirement, defendant need only demonstrate that there are at least 5,001 putative class claims. Defendant has done so. Defendant has submitted the declaration of Jurgens, Director of Sales Audit for defendant, which provides that defendant processed more than 5,000 credit card

transactions over the last year in the state of California. (Jurgens Decl. ¶ 3). Thus, defendant has adduced enough evidence to show that the number of class claimants is sufficient to satisfy the CAFA's jurisdictional requirements.

Because plaintiff alleges in his complaint that defendant is liable for up to $1000 per violation of § 1747.08 in the processing of credit card purchases and returns, and because defendant has proffered evidence that it has processed more than 5,000 credit card transactions, Polo has demonstrated by a preponderance of the evidence that the amount in controversy exceeds $5,000,000. (*Id*. at 1205-06).

Thus, it is without question that here, where Plaintiff has sought up to the legal statutory maximum of $1,000.00 per class member, and Defendant has conceded in its answer that the basis of Federal Court jurisdiction is proper under CAFA (Answer at Page 1, lines 8-13, Page 3, Paragraph 6, lines 12-17), that there are at least 5,001 class members, which is far more than sufficient to satisfy the numerosity requirement for certifying a class action.

Plaintiff has requested from Walmart the exact number of class members, but as of yet, Walmart has not been able to provide that information. As soon as the exact size of the class is known, Plaintiff will immediately file a supplement to this motion.

*C. Commonality*

In its answer, Defendant has admitted that all class members are subject to the same practice, that is, all were required to provide their telephone number and address as a prerequisite to making a credit card transaction. In its answer, Defendant stated,

To the extent the allegations refer to transactions to purchase merchandise over the Internet with a credit card through www.walmart. com, Defendant **admits that customers who use a credit card other than a credit card that has been linked to their customer account on www.walmart .com are required to input a telephone number and billing address into an electronic form to complete the transaction** (Answer, page 1, lines 20-25, emphasis added).

Rule 23(a)(2) is satisfied because Plaintiff's claims are based upon a common practice—all class members were asked to provide their address and telephone number on Walmart's website in the course and scope of a transaction which was either shipped to the customer's address or picked up at a Walmart store. For in store pick up customers, Walmart's policy is to require that the person picking up the merchandise provide a Walmart employee with a picture identification (generally, a driver's license).

This is all that is necessary to state a claim under the Act. A common course of conduct towards the class is all that is required, each transaction need not be identical (*Hanlon v. Chrysler Corp.* 150 F.3d 1011, 1019 (9th Cir. 1998) "The commonality prong is to be construed permissively, and may be satisfied by a common course of conduct.").

Defendant's admission in its answer proves that each class member was subjected to the identical business practice, an on-line form requiring each class member to provide Walmart with his or her telephone number and address in order to make a purchase from Walmart with a credit card. Defendant has also admitted that "it records the telephone number and billing address that the customer inputs into an electronic form (Answer Page 7, paragraph 24, lines 4-6). Satisfying the request/requirement and recording elements of a claim under the Act–all a party need plead and prove to be entitled to the civil penalty under the Act. The issues of law and fact are identical. The law, and its application to each situation is identical. Factually, the business practice was uniform. There is only one factual difference of any significance, whether a customer had a product shipped to him or her (obviously requiring a delivery address) versus a store pick up. Nonetheless, there is no need for a phone number under either circumstance. Plaintiff proposes two subclasses, the "shipping" subclass and the "in store pick up" subclass, as each subclass was subjected to the identical situation based upon method of delivery or pick up.

The in store pick up class has an even stronger case, in that a merchant who requests a picture identification is forbidden from recording any information that appears on the identification. An in store pick up contains all of the elements of an in-store transaction including: 1. The customer must physically visit the store; 2. The customer receives physical possession of the goods in store and leaves with them; 3. The merchant has the right to (and in fact, as is Walmart's policy to) require the presentation of photo identification, generally a driver's license. Walmart has further admitted that it is its policy to require photo identification for in store pick up (Answer, Page 3, lines 2-4). In Plaintiff's case, Walmart required him to provide his telephone

number and address, and his address appears on his driver's license.  <u>Civil Code</u> § 1747.08 (4)(d) states

> This section does not prohibit any person, firm, partnership, association, or corporation from requiring the cardholder, as a condition to accepting the credit card as payment in full or in part for goods or services, to provide reasonable forms of positive identification, which may include a driver's license or a California state identification card, or where one of these is not available, another form of photo identification, **provided that none of the information contained thereon is written or recorded on the credit card transaction form or otherwise**. . . . (emphasis added).

The fact that Walmart requests the personal information in advance of actually requesting the identification is of no consequence, because California law has already held that merchants may not make an "end run" around the Act's intent or purpose by rushing to obtain the information before the method of payment is known.   For example, in the case of *Florez v. Linens n' Things* (2003) 108 Cal. App.4th 447 the Court of Appeal explained why a merchant was prohibited from asking a consumer for personal information even before the merchant knew whether or not the consumer intended to pay by credit card:

> . . . .  As evidenced by the 1991 amendment, section 1747.8 is designed to prevent a "request" for personal information, because a customer might perceive that request as a condition of credit card payment. In effect, the 1991 amendment prevents a retailer from making an end-run around the law by claiming the customer furnished personal identification data "voluntarily." In fact, the Enrolled Bill Report of the California Department of Consumer Affairs, Assembly Bill No. 1477 (1991–1992 Reg. Sess.), specifically addressed this problem, noting "[t]his bill would prohibit requesting or requiring that information." As we read it, the legislative intent suggests the 1991 amendment simply clarified that **a "request" for personal identification information was prohibited if it immediately preceded the credit card transaction, even if the consumer's response was voluntary and made only for marketing purposes**.

> The obvious purpose of the 1991 amendment was to prevent retailers from "requesting" personal identification information and then matching it with the consumer's credit card number. **LNT's interpretation leads to an absurd conclusion, i.e., the retailer may evade the statutory prohibition by rushing to obtain the information before the customer makes his or her payment preference known. That interpretation, if allowed, would completely undermine the purpose of the statute**.

> Based on our review, we conclude the addition of the word "request" to section 1747.8 bars a preliminary request for personal identification information. Accordingly, the allegations in Florez's second amended complaint were sufficient to state a cause of action for a violation of section 1747.8, and we reverse the judgment of dismissal. (*Id*. at 453, Emphasis added).

Similarly, in the *Pineda* case, the California Supreme Court, in holding that merely requesting a zip code was sufficient to state a claim noted that because a zip code appears on a driver's license, a merchant is forbidden from requesting such information:

> Second, only the broader interpretation is consistent with section 1747.08, subdivision (d). Subdivision (d) permits businesses to "requir[e] the cardholder, as a condition to accepting the credit card ..., to provide reasonable forms of positive identification, which may include a driver's license or a California state identification card, ... provided that none of the information contained thereon is written or recorded...." (§ 1747.08, subd. (d), italics added.) Of course, driver's licenses and state identification cards contain individuals' addresses, including ZIP codes. (Veh.Code, §§ 12811, subd. (a)(1)(A), 13005, subd. (a); People v. McKay (2002) 27 Cal.4th 601, 620, 117 Cal.Rptr.2d 236, 41 P.3d 59.) **Thus, under Civil Code section 1747.08, subdivision (d), a business may require a cardholder to provide a driver license, but it may not record any of the information on the license, including the cardholder's ZIP code**. Under the Court of Appeal's interpretation, the Legislature inexplicably permitted in section 1747.08, subdivision (a)(2), **what it explicitly forbade in subdivision (d)—the requesting and recording of a ZIP code**. We decline to conclude such an inconsonant result was intended. (Absher, supra, 164 Cal.App.4th at p. 343, 78 Cal.Rptr.3d 817 ["A statute open to more than one interpretation should be interpreted so as to ' "avoid anomalous or absurd results." ' [Citations.]"].) (*Id.* at 534, emphasis added).

On February 4, 2013, Plaintiff ordered three items from Walmart's website www.walmart .com, and made payment with his credit card. Plaintiff was required to fill out Walmart's on-line preprinted form including having to provide Walmart with his telephone number and address. Plaintiff's transaction would not go through without Plaintiff providing this informaiton. Plaintiff has recently checked and Walmart still employs the identical business practice, that is, all consumers must provide Walmart with their telephone number and address as a condition of purchasing goods (either by delivery or in store pick up).

Walmart's own answer admits as such, namely that all consumers are subjected to the same business practice of requiring consumers who choose to either have merchandise shipped to them, or to pick up merchandise in a local store to provide Walmart with a phone number and address as a condition of making a credit card purchases. Furthermore, with respect to the second subclass (in store pick up), all customers are subject to the further policy of having to provide a picture identification

1   as a condition of picking up their merchandise.

2       Thus, it is beyond question that Walmart imposed the identical business practice

3   upon all California consumers, and each and every class member was subjected to the

4   same practice, the requirement that they provide their telephone number and address to

5   Walmart on Walmart's preprinted form as a condition of purchasing goods from

6   Walmart. Thus, not only is Plaintiff's claim typical of all other class members, but each

7   class member was subjected to the identical business practice.  The questions of law

8   and fact are the same, the law and its application to each class member is identical.

9       *D. Typicality*

10      Much like commonality, typicality is also present in this case, as required by Rule

11  23(a)(3).  Here, Plaintiff simply need show his claims are typical of members of the

12  class.  Plaintiff asserts the same claim as all other class members, that he was required

13  to provide Walmart with his address and telephone number for his Internet purchases,

14  and in the case of the merchandise he picked up in store, he was also required to

15  provide a Walmart employee with his driver's license before his ordered and paid for

16  merchandise was released to him.  Walmart has admitted that Plaintiff's transaction was

17  typical in that all web-based customers (not linked to a Walmart account) are required

18  to provide an address and telephone number for either an in-store pick up, or a shipped

19  goods transaction.  Thus, typicality is present (*see McPhail v. First Command Financial*

20  *Planning, Inc.*, 247 F.R.D. 598, 610 (S.D. Cal. 2007 "The same sales pitch, strategy and

21  scheme that injured the named plaintiff likewise injured the absent class members.").

22      Here, Plaintiff's claim is typical, if not virtually identical to the claims made by

23  all class members.  All persons making a purchase from Walmart, be it in store pick up,

24  or shipped merchandise, must provide Walmart with their telephone number and

25  address as a prerequisite of making a credit card purchase.  All persons who pick up in

26  store are further required to provide identification such as a driver's license.  Plaintiff's

27  claim is typical of every other consumer, he visited the Walmart website, and was

28  required to input his telephone number and address prior to, and as a mandatory

condition of making a credit card purchase.  This information was recorded since it was inputted into Walmart's Internet web page (and Walmart has admitted that it records such information (Answer Page 7, paragraph 24, lines 4-6), and Plaintiff was even required to confirm his information.  For the merchandise picked up in store, Plaintiff was also required to produce identification prior to receiving his merchandise.

*E. Adequacy of Representation*

Rule 23(a)(4) requires that the named plaintiff and his counsel adequately represent the interests of the class.  This rule is deemed satisfied when: 1. Class counsel is qualified and competent to vigorously represent the class and pursue its claims, and 2. The interests of the class representative is not antagonistic to the class' interests (*see e.g. Stanton v. Boeing* 327 F.3d 938, 957 (9th Cir. 2003)).

As is detailed in the declaration of Edwin C. Schreiber, both he and Eric A. Schreiber have vast class action experience as well as excellent credentials.  Class Counsel has handled dozens of class actions, and even has experience defending class actions as well, meaning Class Counsel has experience from both perspectives of class action litigation.  Schreiber & Schreiber, Inc., has been appointed class counsel in numerous class actions (including prior class actions brought under the Song-Beverly Credit Card Act), many of which have settled, and the firm has the experience and knowledge to act as counsel to protect the interests of the class.

Additionally, neither Class Counsel nor the Class Representative, Mr. Leebove has any interests antagonistic to the class.  Plaintiff, like all other members of the class present identical claims, and Plaintiff has no interests in conflict with other class members.  As Plaintiff's declaration demonstrates, he is willing to prosecute this action as a class action and was promised no additional compensation or other benefit. Plaintiff is willing to put the interests of the class first, and ensure the class is properly represented throughout the litigation.  Plaintiff has retained counsel who is experienced in class action litigation, and is familiar with all of the necessary litigation steps to see the case through to the end.

*F. Predominance of Common Issues of Law and Fact and Superiority*

Rule 23(b)(3) provides that a Court may certify a class if: 1. Questions of law or fact common to members of the class predominate over questions affecting only individual members; and 2. A class action is a superior to other methods of fair and efficient adjudication of such claims.  While there may be minor variations in individual transactions, the core legal and factual issues are the same for all class members.  The Defendant's potential liability is not dependent upon different factual and legal bases for each class member, rather each class member's experience is virtually identical and based upon the same policy.  In general courts have noted that "Common questions predominate where a complaint alleges a common course of conduct that affects class members in the same manner." (*Jones v. E\*Trade Mortgage Corp.* 2006 WL 581257 \*2 (S.D. Cal. Feb. 17, 2006).  The commonality requirement is met in this case as the conduct and common policy, even the defenses to the lawsuit are common to all class members.  Common issues of both fact and law predominate this case:

> It [Rule 23] should be construed to permit a class suit where several persons jointly act to the injury of many persons so numerous that their voluntarily, unanimously joining in a suit is concededly improbable and impracticable. Under such circumstances, injured parties who are so minded, may present the grievance to a court on behalf of all, and the remaining members of the class may joint as they see fit. . . .
>
> . . . . To permit the defendants to contest liability with each claimant in a single, separate suit, would, in many cases give defendants an advantage which would be almost equivalent to closing the door of justice to all small claimants. This is what we think the class suit practice was to prevent. (*Weeks v. Barecco Oil Co.* 125 F.2d 84, 89-90 (7th Cir. 1941).

Rule 23(b)(3) is the most common method of class certification in small dollar consumer cases.  This rule encompasses those cases "in which a class action would achieve economies of time, effort, and expense, and promote. . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." (*Amchem Products, Inc. v. Windsor* 521 U.S. 591, 625 (1997)).   Here Rule 23 requires a showing of a predominance of common questions of law or fact and that a class action is the superior method of litigating the action.

### 1. Predominance of fact and law

As discussed in sections III C and III D, *supra* of this motion, every member of the class has been subjected to the identical business practice, and the law for prosecution of each class member's claim is identical.  Plaintiff, like every other class member must demonstrate under <u>Civil Code</u> §1747.08 that:

1. Walmart is a corporation that accepts credit cards for transactions (already proven by Walmart's answer Page 1, Paragraph 3, lines 11-13).

2. That Walmart requested and/or required personal information (as defined under the Act as including, but not limited to telephone number and address) as a condition of paying by credit card, including by and through the use of a preprinted form (already proven by Walmart's answer Page 2, Paragraph 3, lines 20-23, see also Page 5, Paragraph 17, lines 13-15).

3. That Plaintiff and each class member did pay via credit card and was asked to, or required to provide this information to Walmart (Walmart's answer Page 2, Paragraph 3, lines 20-23, see also Page 5, Paragraph 17, lines 13-15).

4. That Walmart recorded Plaintiff's personal information and does, with credit card transactions, record personal information (Answer Page 7, paragraph 24,lines 4-6).

4. Additionally, Walmart's policy is to require all in-store pick up customers to provide a valid photo identification such as a driver's license in order to pick up merchandise (Answer, Page 3, lines 2-4).

This is all Plaintiff and each class member need demonstrate in order to recover a civil penalty, no proof of damages is required.

Similarly, all class members will be subject to the same defenses to the action. That is, all class members are subject to the same argument and potential defense Common issues of fact and law, without question predominate this case.

### 2. A Class Action is the Superior Method of Handling this Case

There are in essence two alternatives to this case, class action status, where the matter is resolved at once, or, should every class member be so inclined to litigate,

likely hundreds of thousands of individual actions.  Class action status is superior where "class wide litigation of common issues will reduce litigation costs and promote greater efficiency."  *Valentino v. Carter-Wallace, Inc.* 97 F.3d 1227, 1234 (9th Cir. 1996).  Under Rule 23(b)(3) a Court should focus on litigation efficiency and judicial economy.  Because the claims made, and factual and legal bases are common to all class members, it is far superior to litigate all claims in one judicial proceeding, rather than a flood of individual lawsuits over the same conduct (*see In re GMC Pick-Up Truck Fuel Tank Products Liability Litigation* 55 F.3d 768, 784 (3rd Cir. 1995).  Cases such as this one, with a large class of people who have all suffered a relatively small injury are ideally suited for class action treatment, as most injured consumers would not have the incentive to engage in the time and effort necessary to litigate over a relatively small amount of money, yet, by aggregating into a class, each class member's rights are protected.  In a case such as this one, a class action is without question a superior method of litigation

With a class likely in the hundreds of thousands of persons or more, and a maximum damage cap of $1,000 per occurrence, the only other forum for this action would be individual small claims actions.  Multiple small individual actions would be a burden on the judicial system, as well as a burden on the defendant, who would be required to continually dispatch an officer to litigate small claims actions all throughout California.  Here, a class action in fact, provides significant benefits to the defendant.  If the case were repeatedly litigated even one finding that Walmart violated the law would result in collateral estoppel for all future cases.  Thus, trying all legal and factual issues once is, without question, a far superior method of litigation.  Cases like this one are the very reason class actions exist, a large group of persons, all with fairly small claims.  Class action litigation is the most efficient method of trying this case.  If anything, the Act would have no teeth and would fail to provide the "robust consumer protection" mandated by the California Supreme Court if the action cannot be prosecuted as a class action.  Clearly, few consumers know of the Act, and even less

would be willing to pay a filing fee and fill out the necessary small claims court paperwork in order to receive between $.01 and at most $250.00 (or $1,000.00) if the consumer can prove multiple violations.   Thus, in order to protect the rights of California consumers, a class action is the only legitimate vehicle to fairly enforce the rights granted to them by the Act.

Furthermore, under Rule 23 (b), in this case: 1. There is a substantial risk of incompatable results should potentially hundreds of thousands separate actions be tried; 2. No other actions have been filed, meaning Plaintiff can properly and adequately protect the interests of all class members; and 3. Clearly, common issues of fact and law predominate, each class member was subjected to the same common business practice. The legal basis for each claim is identical, and the method of calculating the civil penalty is identical.  Factually, each case is virtually identical, and it is without question a far more efficient process to litigate this claim once as a class action, rather than thousands of small claims cases.  Cases such as this one are the very reason class actions exist, and certification of this class will serve judicial economy as well as protect the rights of both the class members, as well as providing efficiency and protection to the Defendant who will only need to present its defense once, rather than risk inconsistent rulings.

### 3. Class Definition

Plaintiff seeks to certify two subclasses: the first are natural persons that ordered from www.walmart .com and had their merchandise shipped to them at a California address, the second subclass consists of natural persons who at the time of ordering from www.walmart .com ordered an item for an in store pickup from a California Walmart store.  The reason for the two subclasses is that for those who had their merchandise shipped to them, Walmart necessarily needed a shipping address, and under the Act, had the right and the necessity to obtain a shipping address. Accordingly, the shipping class seeks penalties only for the telephone number request, while the in-store pick up class seeks penalties for both the address and phone number

request.  Therefore, included in both classes are:

1. All natural persons who were California residents, in the course and scope of making a credit card purchase from Walmart on www.walmart .com, between <u>February 12, 2012 and September 16, 2013</u>, were

2. Requested or required to provide personal information to Walmart as a condition of making a credit card purchase; and

3. Such personal information was recorded by Walmart:

<u>Subclass One</u>

Subclass One consists of all natural persons who were California residents and who in the course and scope of making a credit card purchase from Walmart on www.walmart .com, between February 12, 2012 and September 16, 2013, were required to provide Walmart with their phone numbers, which phone number(s) was or were recorded by Walmart and had one or more items shipped to a California address.

<u>Subclass Two</u>

Subclass Two consists of all natural persons who were California residents and who in the course and scope of making a credit card purchase from Walmart on www.walmart .com, between February 12, 2012 and September 16, 2013, were required to provide Walmart with their phone numbers and addresses, which phone number(s) and address(es) was or were recorded by Walmart and physically picked up their order in a Walmart store located in the State of California.

<u>4. Class Notice Should be Made by Email</u>

Rule 23(e) gives the Court "virtually complete" discretion as to the manner of serving notice of settlement (*Colesberry v. Ruiz Food Products, Inc.* 2006 WL 1875444 *7 (E.D. Cal. June 30, 2006).  To that end "There is no statutory or due process requirement that all class members receive actual notice by mail or other means; rather, 'individual notice must be provided to those Class members who are identifiable by reasonable effort.'" *Eisen v. Carlisle & Jacqueline* 417 U.S. 156, 175-76 (1974).  Here, all consumers initiated their purchases over the Internet, meaning consumers have

initiated electronic commerce, and, Walmart likely has email addresses for all class members.  Email notice in this case is without question both the most efficient, and the most cost effective method of notice, as notice via mail is both significantly more costly and also severely more limited in terms of information that can be provided to class members.  Plaintiff respectfully requests that if class certification is granted, that a further hearing be set to determine the method and content of class notice provided to all class members, before notice is ultimately sent to all class members.

5. In the Even the Court Denies Class Certification, Plaintiff Respectfully Requests it be Without Prejudice, so Further Discovery can be Taken in Order to Provide the Court with a More Complete Picture

Should the Court determine it needs further evidence in order to decide the motion, Plaintiff respectfully requests the motion be denied without prejudice so that Plaintiff has the opportunity to take additional discovery and provide the Court with any additional information it believes it needs.  This notwithstanding, Plaintiff believes Defendant's answer combined with the evidence provided demonstrates all the evidence needed to certify this action as a class action, however, if the Court believes the motion is deficient, then Plaintiff respectfully requests that he be given leave to take further discovery and file an amended motion for class certification.

## IV. CONCLUSION

This action should be certified as a class action, as all of the conditions of Rule 23 have been met.  Plaintiff respectfully requests that this Court issue an order certifying the matter as a class action, and setting a further hearing regarding the form and method of class notice.

DATED: June 14, 2013                          SCHREIBER & SCHREIBER, INC.


                                              BY:   */s/ Edwin C. Schreiber*
                                                    Edwin C. Schreiber, Attorneys for
                                                    Plaintiff, Joel Leebove

1

## CERTIFICATE OF SERVICE

2

I, hereby certify that a true and correct copy of the foregoing document

3   was served on counsel of record via ECF Notice of Electronic Filing in

4   accordance with the Federal Rules of Civil Procedure and Local Rule 5–3.3

5   on June 14, 2013.

6

/s/ Edwin C. Schreiber
Edwin C. Schreiber

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28